IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KRISTA NICOLE SUTER                                                              PLAINTIFF

v.                                    Civil No. 14-2023

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Krista Suter, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her application for SSI on April 13, 2012, alleging an onset date of April 13, 2012, due to scoliosis, pinched nerves, obesity, diabetes, migraines, and bilateral underarm abscesses (hidradenitis). Tr. 142-143, 160-163. Her applications were denied initially and on reconsideration. Tr. 42-43. An administrative hearing was held on December 10, 2012. Tr. 25-52. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 21 years old and possessed the equivalent of a high school education. Tr. 26. She had no past relevant work ("PRW") experience. Tr. 16. At the age of 16, she worked at Sonic for about 6 months. Tr. 132-141. And, although she completed the classes to become a certified nurse's aide and worked in a nursing home for

approximately two months, she had to quit because she could not get her certification. Tr. 28. The Plaintiff was also unable to pass the test to get a driver's license. Tr. 31-32.

On August 17, 2012, the ALJ found Plaintiff's migraine headaches and underarm abscesses to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-12. The ALJ concluded that the Plaintiff could perform a full range of light work. Tr. 12. Utilizing the Medical-Vocational Guidelines (the "Grids"), the ALJ concluded Plaintiff could perform work that exists in significant numbers in the national economy. Tr. 16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on December 24, 2013. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This matter is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 13.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other

AO72A
(Rev. 8/82)

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

**III.   Discussion:**

Plaintiff contends that the ALJ did not fully develop the record; failed to consider all of the Plaintiff's severe impairments; determined an RFC that is inconsistent with the record; and, inappropriately applied the grids.  The court has reviewed the briefs filed by the parties, the transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A.   Duty to Develop the Record:**

In her first point of error, the Plaintiff argues that the ALJ erred by failing to develop the record with regard to her numerous medical impairments.  More specifically, she contests the ALJ's failure to obtain a complete RFC assessment from her treating physician, Dr. McGraw, as well as his failure to order a consultative exam.  While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are inadequate to determine whether the claimant is disabled.  Examples include situations wherein the treating source's report contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§404.1512(e), 416.912(e).

Likewise, the ALJ is not required to order a consultative evaluation of every alleged impairment; he simply has the authority to do so if the existing medical sources do not contain

4

sufficient evidence to make an informed decision. *See Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). Thus, the proper inquiry for this Court is not whether a consultative examination should have been ordered; rather, it is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See id.*; *see also Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994).

Although we note that the Plaintiff has alleged disability due to a variety of medical problems, including chronic back pain, persistent abscesses under her arms, migraine headaches, and diabetes/insulin resistance, we disagree with her argument. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). The Plaintiff was treated for back pain on only three occasions during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). In April 2011, she was treated by the Nurse Practitioner at Van Buren Family Clinic for complaints of back pain radiating down into her thighs. Tr. 202-205. An examination revealed tenderness to the sacroiliac joint, lumbar spine, and right buttock and as well as a positive straight leg raise test. Plaintiff was diagnosed with back pain and numbness of the anterior thigh and prescribed a Medrol Dosepak and Meloxicam. X-rays were ordered, but it does not appear that any x-rays were ever taken. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

On May 27, 2011, she presented in the Emergency Room ("ER") at Summit Medical Center with continued complaints of back pain, numbness and tingling, and general myalgias.

Tr. 174-176. Plaintiff reported that she had unsuccessfully undergone "steroid blocks," though the record contains no medical evidence to support this allegation. Following a diagnosis of chronic back pain, the Plaintiff was released with prescriptions for Lorcet and Cyclobenzaprine. No further treatment was sought until June 20, 2011, when the Plaintiff was treated at the Sparks ER for pain. An examination revealed a decreased range of motion and lumbar tenderness. She was prescribed Voltaren and Flexeril, advised to avoid heavy lifting. This was the last time she was treated for or prescribed medication to treat her alleged back pain, although the Plaintiff did seek out medical treatment for other impairments. And, we note no further range of motion deficits, back pain, numbness, stiffness, or tingling were noted during examinations for these other impairments. Tr. 181, 209, 222, 249. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing). Accordingly, we find that the Plaintiff's failure to seek out consistent treatment coupled with the conservative nature of the treatment provided and the absence of objective medical evidence to support her allegations of ongoing limitation and impairment undermine the Plaintiff's argument that the ALJ erred by failing to either order a consultative exam or request an RFC assessment from her treating physician. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider); *Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); and *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The Plaintiff attempts to justify her failure to obtain more consistent treatment and medication by alleging financial hardship. It is true that a lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003). However, a lack of funds alone will not excuse a Plaintiff's failure to obtain treatment or follow medical advice. Where, as here, there is no evidence to show that the Plaintiff was ever denied treatment due to her lack of finances or that she sought out treatment from clinics offering services to uninsured and underinsured patients, a lack of funds will not justify said failure. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (it is inconsistent with the degree of pain and disability asserted where no evidence exists that claimant attempted to find any low cost or no cost medical treatment for alleged pain and disability).

Plaintiff was also treated for recurrent abscesses in her armpits. On July 9, 2011, she was treated in the ER for three open abscesses under her right arm with localized swelling and intense tenderness. Tr. 208-220. The doctor prescribed Lortab, Bactroban, Bactrim, and Herbiclens cleaner and ordered a culture of the abscess. On August 2, 2011, the Plaintiff visited a dermatologist, reporting that these abscesses were a recurrent problem. Tr. 189-190. She claimed to have been battling them all of her life, but later said they had been present for two years. The dermatologist diagnosed her with hidradenitis suppurativa and prescribed Doxycycline and Clindamycin lotion. Treatment was not sought out again until October 2011. Tr. 191-192. At that time, the Plaintiff reported an inability to afford the medications previously prescribed due to the medication cost. The dermatologist gave her samples of Vectical ointment and Adoxa (Doxycycline). No further problems were reported until April 2012, at which time the Plaintiff presented in the ER with complaints of knots that had emerged two days prior. Tr.

7

221-231. An abscess was noted under her right arm that was both painful and draining. The doctor prescribed Lortab and Bactrim. Plaintiff's final treatment note regarding this impairment is dated October 4, 2012. Tr. 248-252. At that time, she was noted to have pustules under her right arm that were draining thick pus. The doctor prescribed Zithromax and Keflex.

Although the Plaintiff does appear to experience flare-ups associated with her hidradenitis suppurativa, the record does not make clear she suffers from these abscesses on a daily basis. Her initial treatment for this impairment was closely followed by at least two additional treatment notes, one of which was due to her failure to take the prescribed medications. *See Guilliams*, 393 F.3d at 802 ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). However, beginning in October 2011, the time between flare-ups increased to six months. And, it appears that her condition was responsive to medication, when she took the medication as prescribed. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). As such, we can not say that this impairment would prevent the Plaintiff from performing light work.

The record also contains evidence that the Plaintiff suffered from migraine headaches. Although she claimed to have suffered from headaches since childhood, the first treatment note of record is dated February 14, 2012. Tr. 193-196, 244-247. Plaintiff reported "regular" migraines for which Dr. McGraw prescribed Topamax on an as needed basis. There is, however, noting to indicate what is meant by "regular." An MRI was ordered, but alleged financial hardship prevented the Plaintiff from undergoing the test. *See Guilliams*, 393 F.3d at 802 ("A failure to follow a recommended course of treatment . . . weighs against a claimant's

credibility."). On September 12, 2012, the Plaintiff again reported "frequent" headaches. Tr. 240-243. Dr. McGraw directed the Plaintiff to take Topamax nightly. And, on October 4, 2012, when the Plaintiff sought out treatment for her hidradenitis suppurativa, it appears that she also reported headaches. Tr. 249. However, she did not report the duration or frequency of said headaches. And, there is no further medical evidence to document this information.

At the request of the Administration, Dr. McGraw completed a migraine assessment. Tr. 232. She indicated that the Plaintiff experienced approximately four migraines per week lasting three to four hours each. These headaches were reportedly accompanied by auras, nausea, vomiting, photophobia, phonophobia, and throbbing/pulsating pain. Dr. McGraw reported that Topamax had been prescribed to be taken at bedtime on an as needed basis. She documented only a fair response to medication, stating that the Plaintiff's headaches would interfere with her ability to work. However, she offered no explanation of or objective support for her conclusions. Thus, it appears to the undersigned that Dr. McGraw completed the form based solely on the Plaintiff's subjective complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record supports ALJ's conclusion that treating physician's diagnosis and impressions were based largely on the Plaintiff's subjective complaints with little objective medical support). And, the record shows that she sought treatment for headaches on only two occasions during the relevant time period, in spite of allegedly having experienced them since childhood.

9

We also note that the Plaintiff was only prescribed a migraine preventative. Initially, this medication was prescribed on an as needed basis, although Dr. McGraw did increase it to nightly use in September 2012. And, it does not appear that any pain medication was prescribed to actually treat a headache in progress. This suggests to the undersigned that her headaches were not as severe or frequent as alleged. So, while it would have been preferable to have had Dr. McGraw provide an explanation for her migraine statement, we do not find that the ALJ's failure to request clarification requires remand, as her assessment is not otherwise supported by the overall record.

It is also evident from the record that the Plaintiff suffers from diabetes/insulin resistance. Again, the medical evidence is scant, as the Plaintiff was diagnosed with this in January 2012. Tr. 195. At that time, Dr. McGraw prescribed Metformin. And, it appears that Plaintiff's impairment was responsive to treatment as there are no further treatment notes documenting complaints related to this impairment. *See Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Accordingly, we can not say that the ALJ was required to order a consultative exam or contact Dr. McGraw to develop the record further, as this impairment does not appear to have impacted the Plaintiff's ability to work.

**B.    Non-severe impairments:**

The Plaintiff also contends that the ALJ erred by failing to include her back pain as a severe impairment. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from

10

anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. *See* 20 C.F.R. § 404.1527).

As discussed above, the Plaintiff sought treatment for her back pain on only three occasions. She was prescribed pain medication and a muscle relaxer each time, but the record contains no evidence to indicate that she received an ongoing prescription for these medications. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). Further, in spite of the fact that she sought out medical attention for other impairments, at which time she could have mentioned her alleged ongoing back pain, the Plaintiff failed to do so. And, we note that examinations conducted in conjunction with treatment for these other impairments failed to yield results revealing ongoing range of motion deficits, muscle spasms, or tenderness as one would expect to see in a patient with a chronic condition. For these reasons, we find that substantial evidence supports the ALJ's determination that her back pain was not severe.

### C. **RFC**:

In her next issue, the Plaintiff asserts that the ALJ erred by failing to include limitations resulting from her migraine headaches and back pain in his RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence

11

in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

For the reasons set forth in section A above, we do not find that the evidence supports the Plaintiff's complaints concerning the frequency and duration of her migraines. Clearly, the absence of consistent treatment for these alleged "lifelong" headaches, and the fact that she was not taking pain-relieving medications weighs against her subjective complaints.

The Plaintiff contends that the ALJ erred by failing to specifically mention Dr. McGraw's migraine statement. He did not note that the Plaintiff's condition was under "fair" control vial medication, but did not discuss Dr. McGraw's statement that her headaches would interfere with her ability to work. While we do agree that the entire statement should have been mentioned and reasons provided for its rejection, we do not find that this error mandates remand. The United States Court of Appeals for the Eighth Circuit has recognized the doctrine of harmless-error in

12

Social Security cases. *See Byes v. Astrue*, 687 F.3d 913, 917–18 (8th Cir.2012). In order to prove an error was not harmless, the Plaintiff must provide some indication that the ALJ would have decided differently if the error had not occurred." *Id*. at 917 (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir.2003)). It is the opinion of the undersigned that the ALJ would have come to the same conclusion, had he specifically mentioned Dr. McGraw's statement in his opinion. The evidence simply does not support the statement, and remand for the sake of allowing the ALJ to simply acknowledge and dismiss the assessment would not be in the best interest of justice.

    D.    **The Grids:**

Plaintiff next argues that the ALJ improperly relied upon the Grids to determine that she was not disabled. The Grids are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability. *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir.2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The Grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical RFC to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir.2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir.1993) (internal quotation marks and citation omitted).

In the present case, the ALJ determined that the Plaintiff could perform light work. Applying Rule 202.20, which pertains to younger individuals with a high school education and no PRW, the ALJ properly found the Plaintiff not disabled. Plaintiff contends that this is error because she can not perform light work. However, we have found substantial evidence to support the ALJ's RFC determination. And, as such, we find no error in the ALJ's application of this Grid.

### IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 9th day of February, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE